MANUEL PÉREZ RIVERA, Plaintiff and Appellant, *v.* RAFAEL OLAZAGASTI FIOL ET AL., Defendants and Appellees.

No. R-63-187.      Decided June 30, 1964.

*Romany & Romany* for appellant. *Francisco Fernández Cuyar* and *Rafael A. González* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On September 11, 1961, Manuel Pérez Rivera was traveling on a truck owned by Rafael Olazagasti Fiol along the Fajardo-San Juan highway. When one of the front tires blew out, the vehicle left the road and crashed into a tree, as a result of which he received contusions, wounds, and a fracture on the left forearm and wrist. The injured filed a complaint for recovery of damages against the owner of the truck, Olazagasti, the latter's chauffeur, and the company insurer of the vehicle. The complaint having been answered and a trial having been held on the merits, the Superior Court rendered judgment dismissing the complaint after making the following findings:

"1. Plaintiff Manuel Pérez Rivera is an employee of the firm Miguel & Cía. He is experienced in the operation of heavy machinery and heavy-motor vehicles. At the time of the occurrence which gave rise to this case, he was engaged by his

employer in transporting and delivering heavy machinery and equipment to the clients of the business.

"2. Rafael Olazagasti Fiol is the owner of a truck enterprise. He used to rent them to San Miguel & Cía. according to the needs of this firm.

"The U.S. Fire & Insurance Co. is an insurance company authorized to operate in Puerto Rico. At the time of the accident it had issued an insurance policy covering the civil liability which Olazagasti could incur as a result of the operation and use of the truck involved in this case.

"3. On September 11, 1961, and while in the course of the duties of his occupation, he left for Luquillo to deliver a heavy, mechanical, self-propelled shovel. In order to facilitate the transportation, some of the pieces which formed part of the equipment to be delivered were transported on a truck which San Miguel & Co. rented for that purpose from defendant Rafael Olazagasti Fiol. When he left for Luquillo his supervisor told or ordered him to return in the rented truck. After considering as a whole the oral evidence presented jointly with the answer to question No. 7 of the written interrogatory offered in evidence by plaintiff himself, we conclude that the renting of the truck did not include the return trip, wherefore plaintiff at the time of the accident was not an invitee but rather an occupant of the truck, being therefore what in American law is known as a 'licensee.'

"4. The truck was operated that day by Juan Manuel Canales, who was then and there an employee of codefendant Olazagasti acting in the course of the normal duties of his employment. After the equipment was delivered Pérez got on the truck and proceeded on the return trip along highway No. 3, known as 65 de Infantería. The road is wide, straight, was dry, unobstructed, and the visibility was good. The truck, a heavy one, was driven at a speed of forty (40) miles per hour, and suddenly one of the front tires blew out. The chauffeur, upon the advice of plaintiff, tried to control the truck, but being, in the opinion of plaintiff himself, a physically weak man, he was unable to control it and ran down a lowland and came to rest when it crashed into a tree which broke as a result of the impact. From the moment of the blowout until the place where it went off the road, the truck covered a distance of approxi-

mately 105 feet. When it crashed into the tree as stated above, plaintiff was thrown from the cabin and rolled along a distance of approximately 30 feet.

"4. [*sic*] As a result of the crash plaintiff received a wound on the right frontal region which left an L-shaped scar approximately 1¼ inches long. He sustained a fracture on the radius of the left forearm near the wrist, which is known as Colles' fracture. At the place of the fracture he has an L-shaped hypertrophic scar 3½ inches long which causes him discomfort. Considering the loss in the flexion movements of the palmar region, a slight loss in the grasping force, and a slight deformity of the wrist, plaintiff has a permanent incapacity of 20 percent in the use of the left forearm. Although only the functions of the wrist are considered, he would have an incapacity of 30 percent.

"Although plaintiff is not disabled to handle heavy equipment, he has more difficulty than formerly because of the injuries. His employer changed him to other work, and although his basic salary is higher, considering the pay which he used to receive for hours worked in excess of the working period, his cash income has diminished by an approximate amount of $25 a month.

"5. Plaintiff, who qualified himself as an expert in the operation of heavy trucks, testified that when he boarded the truck in Luquillo he noticed that the front tires were so worn out that he called the chauffeur's attention, and reprimanded him for starting on a trip with tires in such a condition. Plaintiff's theory rests fundamentally on that fact and on the lack of physical strength of the chauffeur to be able to control the truck which is a heavy type. It is worth noting that neither party introduced additional evidence on the condition of the tires. Canales merely denied that Pérez made those observations to him before starting on the return trip. We have not given credit to plaintiff on the condition of the front tires, for the following reasons: There is nothing in the evidence to show that the employee of San Miguel & Cía. who ordered plaintiff to return in the same truck had knowledge of the deficiency of the tires or the chauffeur's weakness. Moreover, it is reasonable to infer that he was unaware of those facts, as was plaintiff too, when he left the employer's establishment. Considering further the length of time plaintiff had been working

for his employer, his experience in that type of work, and that it would have been easy to obtain other transportation, according to the evidence, such order should be and undoubtedly was interpreted merely as a directive. It should be observed that plaintiff did not say in his testimony that he got on the truck because he felt obliged to the point of being afraid of losing his employment if he did not. We therefore believe that if plaintiff had noticed that the condition of the tires was that which he claims, he would not have run the risk of returning on that truck. Nor do we believe that the accident was due to Canales' lack of experience, nor to the fact that the truck was traveling at a speed of 40 miles per hour. Plaintiff himself, who is experienced, does not believe that the speed was the direct and immediate cause for not controlling the truck. Of course, the speed bears relation to the lack of control caused by a blowout, but it cannot be considered in itself excessive and negligent unless we had accepted as true the fact that the tires were worn out. Regarding the fact that the chauffeur's lack of physical strength was of such a nature that we might conclude that Olazagasti was negligent in engaging him, we cannot agree either. It is possible that if he had been more robust he could have controlled the truck, but that is wholly speculative. The facts show that he tried to control the truck along a stretch of 105 feet, which proves that he was not so feeble. In any event, we submit that in our opinion the fact that the accident could have been avoided if a more robust man had been behind the wheel is wholly speculative.

"Nor is there any showing that the chauffeur was so inexperienced in his line that his selection may be classified as an act of negligence of defendant. We therefore conclude that the accident, as a matter of fact, was fortuitous and traceable to unknown causes, regarding which defendant's liability has not been established."

■ Plaintiff-appellant assigns as first error the erroneous application made by the trial court of the doctrine of "assumption of risks," instead of applying that of comparative negligence. The assignment is wholly frivolous. A mere reading of the findings copied shows that the judgment is not predicated on the doctrine of "assumption of risks."

What the findings say is that if plaintiff had noticed that the tires were in bad condition, "he would not have run the risk of returning on that truck." This is only one of the trial judge's reasonings for not giving credit to plaintiff's contention that the truck tires were worn out. But the actual reason underlying the ruling is that the accident was casual and that the driver of the truck was not negligent. By the same token, the second assignment to the effect that it was error "not to determine as a matter of fact that plaintiff had orders to return in Olazagasti's truck, and, therefore, the doctrine of comparative or contributory negligence cannot be imputed to him," is also frivolous.

■ The third and fourth assignments allege that it was error not to give credit to plaintiff's uncontroverted testimony on the bad condition of the tires of the truck, since the deposition taken to codefendant Manuel Canales was never offered in evidence.

For the first time, and in this appeal, appellant raises the question of the failure to offer in evidence Canales' deposition. In deciding the case the trial court took the deposition into consideration, but in that court plaintiff did not invite attention to the question which he now raises before this Court. However, the circumstances appearing from the record show that both the trial judge and the parties agreed to submit the case to the court for decision after the deposition was filed in the record and the other evidence of the parties was heard. In this connection, we cite with approval the following argument advanced by appellee in his brief:

". . . If we examine the transcript of the evidence, we find that when the case was brought defendant-appellant informed the court that he was ready for hearing, but that it was necessary to take a deposition to witness Canales who was confined in a tuberculosis hospital. In the transcript of evidence (p. 4) the court says that the case would be submitted after the deposition was taken. Appellant's attorney was present at the

taking of the deposition, stipulated that it need not be signed by the witness, and that the transcript and certification of the reporting stenographer was all that was necessary. The attorney knew that the deposition would be filed with the clerk of the court for the purpose of submitting the case, as announced by Judge Moreda at the opening of the hearing. Appellant's attorney never objected to the filing of the deposition in court for submission of the case, and for these reasons we believe that the third error assigned on the question of the taking of the deposition is frivolous. Furthermore, we understand that at the opening of the hearing appellee offered Canales' testimony, indicating that it would be made in the form of a deposition because of the witness' state of health. The situation having been considered, the trial court ordered that the deposition be taken after the hearing, after which the case would be submitted. In other words, the court and the appellee interpreted the situation as an offer of Canales' testimony." (Brief for appellees, p. 7.)

The fifth error assigned is the court's failure to apply to the facts of this case the doctrine of *"res ipsa loquitur."*

■ ■ In support of his contention, appellant cites the case of *Ramos* v. *Water Resources Authority,* 86 P.R.R. 572 (1962), in which we held that the sole effect of the application of the doctrine of *res ipsa loquitur* is to establish a permissible inference in favor of plaintiff. We also said in that case:

"Conceding that the scope of the doctrine *res ipsa loquitur* is to establish an inference of negligence, let us examine the requirements necessary for its application: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been the result of any voluntary action or contribution on the part of plaintiff. *Cintrón* v. *A. Roig, Sucrs.,* 74 P.R.R. 957, 964 (1953); *Hermida* v. *Feliciano,* 62 P.R.R. 54 (1943). In *Cintrón* we said further that if from the facts there appears some other probable cause of the accident from which it may be inferred that there was no negli-

gence, and if the evidence is compatible with the absence of negligence, the doctrine is not applicable. We also said that if the facts give rise to two conflicting inferences, one to the effect that due care was exercised and the other that negligence existed, the doctrine is not applicable." (Pp. 583 and 584.)

Appellant maintains "that the three requirements stated are present in this case: (1) the accident must be of a kind that it does not occur in the absence of negligence; we are of the opinion that a vehicle does not normally leave the road, and if it does, it must be due to negligence; and that that fact is not normal but rather abnormal." He then adds that here "the accident was due to defendant Olazagasti's negligence in renting a truck the front tires of which were worn out, and to the chauffeur's negligence in operating the truck at a speed of 40 miles knowing that the tires were worn out."

His theory is therefore predicated on the fact that the front tires of the truck were worn out causing a tire to blow out, which, together with the speed of the vehicle, caused the latter to run off the road with the known results. However, the trial judge did not give credit to that part of plaintiff's testimony which referred to the condition of the tires of the truck. On the other hand, the *res ipsa loquitur* doctrine has been frequently applied in situations in which a motor vehicle leaves the road suddenly, for unknown reasons, and causes damage. See Annotation in 79 A.L.R.2d 6. In the instant case the inference that the truck ran off the road because of someone's negligence is untenable, since the cause is known, as established by the evidence of plaintiff-appellant. One of the front tires of the truck blew out and, being a heavy vehicle, the chauffeur was unable to control it, as a result of which it left the road and crashed into a tree. However, it was always necessary to determine by permissible inference whether the blowout of the tire was due to someone's negligence, since no evidence believable by the

trier was presented on the state or physical condition of the tires.

In *Hermida* v. *Feliciano*, 62 P.R.R. 54 (1953), we said that the *res ipsa loquitur* doctrine is applicable in a case in which, according to the facts, a person is injured by the rim of one of the wheels of a truck which is parked near the sidewalk of a public street as a result of an explosion of the left rear tire and struck that person. At p. 56 we said:

"In the instant case the only serious question is as to the first requirement. The cases, like *Bolin* v. *Corliss, supra,* on which the defendant relies, are distinguishable from the facts herein in that the blowouts and other accidents occurred in those cases while the automobiles involved were being driven. It may well be that such episodes as blowouts under those circumstances ordinarily occur without negligence. But we are not prepared to say that an explosion of a tire on a parked truck, resulting in blowing the rim off the wheel, is apt to occur as a regular matter, unless some negligence occurred somewhere in the preceding chain of events. As Prosser puts it (pp. 296–7) 'As a matter of common knowledge there are many accidents which may often occur without anyone's fault: tire blowouts and skidding automobiles . . . . On the other hand there are occurrences which in themselves bespeak negligence. . . . When a gasoline filling station mysteriously explodes, many possible explanations suggest themselves, but the most likely one is negligence on the part of those in charge. All that is required is that reasonable men shall be able to say that on the whole it is more likely that there was negligence associated with the cause than that there was not.' See also Annotation in 93 A.L.R. 1101. We therefore believe that, under the circumstances of the instant case, the doctrine of *res ipsa loquitur* should have been applied."

■ We concede that a steadfast rule cannot be established to the effect that the doctrine of *res ipsa loquitur* is inapplicable to accidents occasioned by blowouts of motor-vehicle tires. See, for example, *Fenstermacher* v. *Johnson*, 32 P.2d 1106. The *res ipsa loquitur* doctrine has been ad-

vanced in a number of cases of accidents caused by blowouts of tires, but generally the courts have declined to apply it adducing as reasons, among others, that its application would amount to saying that blowouts do not ordinarily occur in the absence of negligence while operating the automobile at the time of the accident; that it is a well-known physical fact that a defective tire causes such accidents, and that the possible or probable causes are not all within the control of the driver of the vehicle; as well as that it is common knowledge that defective tires are a frequent cause of blowouts. See Annotation in 24 A.L.R.2d 183.

■ In the present case circumstances other than the blowout itself have not been established to render applicable the *res ipsa loquitur* doctrine, nor, therefore, the inference that the accident was due to the negligence of the truck driver.

Having decided that appellee had not incurred liability, the determination whether plaintiff was a "licensee" or a "business invitee" is unimportant, as well as the determination of whether or not the renting of the truck included plaintiff's return to San Juan. For these reasons, the sixth and seventh errors should be dismissed.

■ We have already said that it was not established that the front tires of the truck were worn out, nor can we conclude, as does appellant, that the speed of the truck, coupled with the physical condition of the driver, was one of the causes of the accident. At the time of the accident the operator of the truck weighed about 135 pounds, was not ill, had been operating heavy vehicles for three and one-half years, and never encountered any difficulty in their operation. The eighth and ninth errors were not committed. Nor the tenth and last error. The findings of fact of the trial court are supported by the evidence and are not clearly erroneous.

There is nothing in the record to show that the trial judge was moved by prejudice and bias.

The judgment rendered by the Superior Court will be affirmed.